# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**Wayne R. Stanley, Jr.,**
**Marcel Hawkins,**

        **Plaintiffs,**

                                   **Case No.: 3:16-cv-01186-BJD-PDB**

    **v.**

**Vectrus, Inc.,**

        **Defendant.**

_____/

**PLAINTIFFS' FIRST REQUESTS FOR ADMISSION**
**TO DEFENDANT VECTRUS, INC.**

PROPOUNDING PARTY: Wayne R. Stanley, Jr.; Marcel Hawkins
RESPONDING PARTY: Vectrus Inc.
SET NUMBER: 1 (One)

      Plaintiffs Wayne R. Stanley, Jr. ("Stanley") and Marcel Hawkins ("Hawkins")

(collectively "Plaintiffs"), pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 36,

request that Defendant Vectrus, Inc. ("Vectrus") admit the truth of the following requests for

admission ("Requests"). Pursuant to FRCP Rule 36, Vectrus is required to provide written

responses to these Requests for Admission within thirty (30) days of service. Vectrus' response

must be signed as required by FRCP Rule 26(g). If Vectrus fails to respond to these Requests for

Admission within the time allowed, the matters set forth in these Requests may be deemed

admitted and conclusively established against Vectrus for this action.

## INSTRUCTIONS

      a.      Vectrus may not give lack of information or knowledge as a reason for your

failure to admit or deny unless you include in your written response a certification that you have

made reasonable inquiry and that the information known or readily obtainable by you is

insufficient to enable you to admit or deny. Your inquiry is "reasonable" only when: (1) you examine any and all documents or tangible things in your possession, custody, or control that in any way refer or relate to the matter requested to be admitted; and (2) you make inquiry of your principals, agents, employees, attorneys, representatives, and any persons acting or purporting to act on your behalf, and any other persons in active concert and participation with you, whether past or present and without regard to whether or not their relationship with you currently exists or has been terminated.

b.      FRCP Rule 36 requires that any denial by you of a matter requested to be admitted must fairly meet the substance of the requested admission and that when good faith requires an answer to be qualified or a part of the request be denied, such qualification or denial must be specific and admit that part of the requested admission that is true. That a request seeks information that is equally available to all parties is not a valid objection. That a request presents a genuine issue for trial is not a sufficient answer. If you deny any matter requested to be admitted and the truth of the request is eventually proven at trial, FRCP Rule 37 provides that you may be ordered to pay to the requesting party the reasonable expenses incurred in proving the matters requested to be admitted, including reasonable attorney's fees. Each denial of a request for admission must be made under the pains and penalties of perjury.

c.      You are required, if you object to any request on the grounds of privilege, work-product, trade secret, or any other grounds, to state for each such objection the precise nature of the objection made and a complete description of all facts upon which you or your counsel rely in making the objection.

d.      Pursuant to FRCP Rule 36, to the extent that you do not entirely dispute the authenticity of a copy of a document, but dispute specific aspects of the copy, such as differences

in format or the presence, absence, or difference of notations or signatures from a copy that you would be willing to admit as genuine, please set forth what aspect or aspects of the copy is not admitted as genuine.

e.     FRCP Rule 36 requires that each admission, denial, objection, or statement shall be preceded by the request to which it responds.

f.     You are specifically requested pursuant to FRCP Rule 26 to seasonably supplement all of your answers to these requests to include any information acquired by you after the date of your answers.

## DEFINITIONS

a.     **"Date Range"** means on or about January 2016 through November 2016.

b.     **"Defendant," "Vectrus," "You" or "Your"** means Defendant Vectrus, Inc., any and all present and former agents, representatives, servants, consultants, employees, subsidiaries and all other persons acting or purporting to act on behalf Vectrus, Inc., and having knowledge of the subject matter of this lawsuit.

c.     **"Plaintiffs"** means Plaintiffs Wayne R. Stanley, Jr. and Marcel Hawkins, any and all present and former agents, representatives, servants, consultants, employees and all persons acting or purporting to act on behalf of Wayne R. Stanley, Jr. and Marcel Hawkins, having knowledge of the subject matter of this lawsuit.

d.     **"Person," "persons," "people," and "individual"** means any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

e.      **"Vectrus' Website"** means the Vectrus Internet presence located on the Internet at www.vectrus.com.

f.      **"Complaint"** means Wayne R. Stanley, Jr. and Marcel Hawkins' pleading filed on September 19, 2016, Doc. 1 of the instant action.

g.      **"Exelis"** means the corporate predecessor of Vectrus, Inc.

h.      **"Vectrus Systems Corporation"** means the wholly owned subsidiary of Vectrus, Inc.

i.      **"Photograph"** refers to Complaint <u>Exhibit B</u>'s <u>Exhibit 1</u>.

j.      **"SIPR"** means the Secret Internet Protocol Router Network, a system of interconnected computer networks used by the U.S. Department of Defense and the U.S. Department of State to transmit classified information.

k.      **"NIPR"** means the Non-classified Internet Protocol Router Network, a system of interconnected computer networks used by the U.S. Department of Defense and the U.S. Department of State to exchange unclassified but sensitive information between "internal" users as well as providing users access to the Internet.

l.      **"Enclave"** means a segment of an internal network or networks that is defined by common security policies, such as NIPR and SIPR, necessary when the confidentiality, integrity, or availability of a set of resources differs from those of the general computational environment.

m.      **"SWA"** means the Southwest Asia Domain located in Southwest Asia Cyber Center.

n.      **"SWACC"** means the Southwest Asia Cyber Center, located at Camp Arifjan, Kuwait.

o.      **"Camp Arifjan, Kuwait"** is a U.S. military base and the location of the

Southwest Asia Cyber Center.

p.      **"Kirby"** means Andre D. Kirby, an individual who worked as a civilian contractor at Camp Arifjan, Kuwait.

q.      **"Stanley's NIPR Workstation"** means Stanley's workstation for use on the NIPR Enclave, numbered ARFJNBNCJKM5883, located on the SWA domain, controlled by the Southwest Asia Cyber Center at Camp Arifjan, Kuwait.

r.      **"NIPR HA Account"** means an account that allows a NIPR user to remotely access NIPR workstations on the network.

s.      **"SIPR HA Account"** means an account that allows a SIPR user to remotely access SIPR workstations on the network.

t.      **"ARCENT"** means U.S. Army Central, headquartered at Shaw Air Force Base, South Carolina with a forward element at Camp Arifjan, Kuwait.

u.      **"IA"** means Information Assurance.

v.      **"Microsoft Active Directory"** means an application or program providing directory services developed by Microsoft for Windows domain networks, it is included in Windows Server operating systems as a set of processes, reporting and services.

w.      **"Quest Change Auditor"** means an application or program that provides total auditing and security coverage of an enterprise network. The audit activities include: auditing the activities taking place in a network's infrastructure and, with real-time alerts, delivers detailed information about vital changes and activities as they occur, logs who made the change, including the Internet Protocol address of the originating workstation, where and when it occurred along with before and after values.

x.      **"ArcSight"** means an application or program that collects information from any

system that generates log data as a log data repository to aid in faster forensic analysis of information technology operations, application development, and cybersecurity issues, and to simultaneously address multiple regulations.

y.   **"Logs"** means the data collected by the aforementioned applications or programs related to transactions or other activity on said applications or programs.

## REQUESTS FOR ADMISSION

1.   Exelis was formed as a State of Indiana "Domestic For-Profit Corporation" on May 4, 2011.

**Admit or Deny:**


2.   Exelis was formed as a State of Colorado "Foreign For Profit Corporation" on September 6, 2011.

**Admit or Deny:**


3.   On December 11, 2013, Exelis' board of directors approved a plan to spin-off its military and government services business, called Exelis Mission Systems, into an independent public company.

**Admit or Deny:**

4.    On September 27, 2014 Exelis' board of directors gave final approval of plan to spin-off its military and government services business, called Exelis Mission Systems, into a separate and independent company called Vectrus, Inc.

**Admit or Deny:**


5.    Vectrus is a corporate entity separate from and independent of Exelis.

**Admit or Deny:**


6.    On May 29, 2015 the Harris Corporation completed its acquisition of Exelis.

**Admit or Deny:**


7.    On December 31, 2015, Exelis became an inactive Domestic For-Profit Corporation in the state of Indiana.

**Admit or Deny:**


8.    On January 25, 2016, Exelis filed a "Statement of Foreign Entity Withdrawal" with the Secretary of State of Colorado.

**Admit or Deny:**


9.    Vectrus was formed as a "Domestic For-Profit Corporation" with the Secretary of State of Indiana on February 4, 2014.

**Admit or Deny:**

10. Vectrus was formed as a "Profit Corporation" with the Secretary of State of Colorado on October 4, 2014.

**Admit or Deny:**


11. Vectrus has not registered as a "Foreign Corporation" with the Secretary of State of Colorado.

**Admit or Deny:**


12. On September 29, 2014, Vectrus began operations as a publicly traded company.

**Admit or Deny:**


13. Vectrus employs approximately seven thousand (7,000) people worldwide.

**Admit or Deny:**


14. The Secretary of State of Delaware lists Vectrus Systems Corporation as a "General Corporation" formed on June 13, 1945.

**Admit or Deny:**


15. The Secretary of State of Colorado lists Vectrus Systems Corporation as a "Foreign Corporation" formed on July 28, 1945.

**Admit or Deny:**

16. Vectrus Systems Corporation is a wholly owned subsidiary of Vectrus.

**Admit or Deny:**


17. Vectrus' Website was first captured in the Internet Archive on December 30, 2014.

**Admit or Deny:**


16. Vectrus' Website was registered with the domain name registrar Network Solutions on July 1, 2005.

**Admit or Deny:**


18. The domain name registration for Vectrus' Website expires on July 1, 2017.

**Admit or Deny:**


19. The vectrus.com domain name is currently registered to Exelis, Inc.

**Admit or Deny:**


20. Vectrus' Website homepage contained a Photograph of Stanley and Hawkins during the Date Range.

**Admit or Deny:**

21.     The Photograph depicts the likeness of Hawkins.

**Admit or Deny:**


22.     The Photograph depicts the likeness of Stanley.

**Admit or Deny:**


23.     The Photograph was taken in a secure, limited access room at Camp Arifjan, Kuwait in 2011.

**Admit or Deny:**


24.     Vectrus' Website page <www.vectrus.com/news/vectrus-reaches-out-military-leaders-service-members-and-partners-ausa-meeting> contained the Photograph during the Date Range.

**Admit or Deny:**


23.     The Photograph was removed from Vectrus' Website homepage shortly after May 5, 2016.

**Admit or Deny:**


25.     Hawkins was never employed by Vectrus.

**Admit or Deny:**

26.     Stanley was never employed by Vectrus.

**Admit or Deny:**


27.     Hawkins never gave Vectrus permission to use his likeness.

**Admit or Deny:**


28.     Stanley never gave Vectrus permission to use his likeness.

**Admit or Deny:**


29.     Vectrus used the Photograph for its commercial advertising.

**Admit or Deny:**


30.     Vectrus used the Photograph for its commercial marketing.

**Admit or Deny:**


31.     Vectrus used the Photograph in Vectrus' Investor Presentation held on September 19, 2014.

**Admit or Deny:**


32.     Vectrus used the Photograph in Vectrus' Securities and Exchange Commission Form 8-K filing, dated September 19, 2014.

**Admit or Deny:**

33.     Vectrus produced a large poster using the Photograph with the top tag line "Adapting To Evolving Needs" and bottom tag line "Vectrus True To Your Mission."

**Admit or Deny:**


34.     Vectrus produced a large poster using the Photograph with the top tag line "Always standing shoulder-to-shoulder enabling your mission."

**Admit or Deny:**


35.     Stanley and Hawkins are standing shoulder-to-shoulder in the Photograph.

**Admit or Deny:**


36.     The above-mentioned poster(s) were distributed to Vectrus' offices and operational areas worldwide.

**Admit or Deny:**


37.     The above-mentioned poster(s) were displayed at the Vectrus' exhibit booth at the AUSA 2014 Annual Meeting on October 13th through October 15th, 2014 in Washington D.C. to 28,349 attendees and exhibitors.

**Admit or Deny:**

38.     The AUSA 2014 Annual Meeting on October 13th through October 15th, 2014 in Washington D.C. saw the attendance of more than twenty-eight thousand (28,000) attendees and exhibitors.

**Admit or Deny:**


39.     The above-mentioned poster(s) appeared numerous times on Vectrus' Facebook page, located at <www.facebook.com/vectrusinc>.

**Admit or Deny:**


40.     The above-mentioned poster(s) were used for Vectrus' employee recruitment job fairs worldwide.

**Admit or Deny:**


41.     A much larger version of the above-mentioned poster(s) were displayed at Vectrus' May 2015 Annual Meeting of Shareholders.

**Admit or Deny:**


42.     The above-mentioned poster(s) appeared numerous times on Vectrus' LinkedIn page, located at <www.linkedin.com/company/3863778>.

**Admit or Deny:**

43.     The above-mentioned poster(s) appeared numerous times on Vectrus' Twitter page, located at <www.twitter.com/vectrus>.

**Admit or Deny:**


44.     The above-mentioned poster(s) appeared on Vectrus' GooglePlus page, located at <www.plus.google.com/+Vectrus>.

**Admit or Deny:**


45.     On May 5, 2016, Stanley's "First Notice of Unauthorized Publication of Name or Likeness" letter was sent to and received by Vectrus' General Counsel, Michele L. Tyler via FedEx.

**Admit or Deny:**


46.     The "First Notice of Unauthorized Publication of Name or Likeness" letter contained the following paragraph:

> During this initial period we demand that you preserve all evidence such as Vectrus' advertisements, images, webpages, computers, external hard drives and all communications electronic (emails, texts, instant messages) and printed documents, as same may become evidence at trial should the matter not settle. As we discuss the settlement of this matter, we continue to reserve all rights to litigate should no amicable resolution be reached.

**Admit or Deny:**

47.     On May 10, 2016 Vectrus' Deputy General Counsel, Chris Rather, responded to the "First Notice of Unauthorized Publication of Name or Likeness" letter.

**Admit or Deny:**


48.     Chris Rather's response indicated he would begin the process of evaluating the claims Stanley made and respond within a reasonable time.

**Admit or Deny:**


49.     Sometime after May 10, 2016, Vectrus removed posts that contained the Photograph from Vectrus' Facebook page.

**Admit or Deny:**


50.     Sometime after May 10, 2016, Vectrus removed posts that contained the Photograph from Vectrus' LinkedIn page.

**Admit or Deny:**


51.     Sometime after May 10, 2016, Vectrus did not removed posts that contained the Photograph from Vectrus' GooglePlus page.

**Admit or Deny:**

52.     Sometime after May 10, 2016, Vectrus removed all posts, except for one, which contained the Photograph from Vectrus' Twitter page.

**Admit or Deny:**


53.     Stanley's NIPR Workstation was accessed remotely by an unauthorized entity during the Date Range.

**Admit or Deny:**


54.     Vectrus has knowledge of the following: On or about July 26, 2016, Stanley noticed suspicious activity on his NIPR Workstation.

**Admit or Deny:**


55.     Vectrus has knowledge of the following: Stanley searched his NIPR Workstation and was able to locate and capture screenshots of six (6) intrusions via remote access.

**Admit or Deny:**


56.     Vectrus has knowledge of the following: The remote access to Stanley's NIPR Workstation came from Kirby's NIPR HA Account.

**Admit or Deny:**

57.     Vectrus has knowledge of the following: Stanley immediately informed the proper authorities of the suspicious activities on his NIPR Workstation.

**Admit or Deny:**


58.     Vectrus has knowledge of the following: On August 5, 2016, Stanley filed a report with the Inspector General to request an outside investigation though ARCENT IA for repeated Unauthorized Access Incidents on Stanley's Workstation.

**Admit or Deny:**


59.     During the Date Range, Vectrus was responsible for the creation of HA Accounts in the Microsoft Active Directory in the SIPR Enclave on the SWA Domain located in SWACC.

**Admit or Deny:**


60.     During the Date Range, Vectrus was responsible for the creation of HA accounts in the Microsoft Active Directory in the NIPR Enclave on the SWA Domain located in SWACC.

**Admit or Deny:**


61.     Vectrus is responsible for the deletion of HA Accounts in the Microsoft Active Directory accounts on the SIPR Enclave on the SWA Domain located in SWACC.

**Admit or Deny:**

62.     Vectrus is responsible for the deletion of HA Accounts in the Microsoft Active Directory accounts on the NIPR Enclave on the SWA Domain located in SWACC.

**Admit or Deny:**


63.     A NIPR HA Account allows for remote access of any computer in the NIPR Enclave on the SWA Domain located in SWACC.

**Admit or Deny:**


64.     During the Date Range, Vectrus had the ability to use HA Accounts to access any machine remotely on the NIPR enclave from SWACC.

**Admit or Deny:**


65.     During the Date Range, Vectrus' contractors not associated with the operation of information technology services had the ability to use HA Accounts to access any machine remotely on the NIPR Enclave from SWACC.

**Admit or Deny:**


66.     During the Date Range, Vectrus had the ability to use anyone's HA Account to change HA Account passwords on the NIPR Enclave from SWACC.

**Admit or Deny:**

67.     During the Date Range, Vectrus' contractors not associated with the operation of information technology services had the ability to use anyone's HA Account to change HA Account passwords on the NIPR Enclave from SWACC.

**Admit or Deny:**


68.     During the Date Range, Vectrus never terminated any of its employees for using another user's HA Account to access any workstation from SWACC.

**Admit or Deny:**


69.     ARCENT is responsible for the creation of HA Accounts on the SIPR Enclave on the SWA Domain located in SWACC.

**Admit or Deny:**


70.     ARCENT is responsible for the deletion of HA Accounts on the NIPR Enclave on the SWA Domain located in SWACC.

**Admit or Deny:**


71.     During the Date Range, Vectrus was responsible for the control of the Quest Change Auditor for the Microsoft Active Directory for the SIPR Enclave on the SWA Domain at SWACC.

**Admit or Deny:**

72.     During the Date Range, Vectrus was responsible for the control of the Quest Change Auditor for the Microsoft Active Directory for the NIPR Enclave on the SWA Domain at SWACC.

**Admit or Deny:**


73.     Kirby's SIPR HR Account was still active in the Microsoft Active Directory as of December 2016.

**Admit or Deny:**


74.     Kirby's NIPR HR Account was deleted from the Microsoft Active Directory accounts on or about September 2016.

**Admit or Deny:**


75.     Vectrus knows the individual who deleted Kirby's HA NIPR Account in SWACC.

**Admit or Deny:**


76.     Vectrus deleted Kirby's HA NIPR Account during an ARCENT investigation of the remote access to Stanley's Workstation during the Date Range.

**Admit or Deny:**

77.     ARCENT IA requested access to the change logs from the Quest Change Auditor to the Microsoft Active Directory from Vectrus SWACC.

**Admit or Deny:**


78.     Vectrus provided access to the change logs from the Quest Change Auditor to the Microsoft Active Directory to the ARCENT IA office from SWACC.

**Admit or Deny:**


79.     Vectrus did not provide access to the change logs from the Quest Change Auditor to the Microsoft Active Directory to the ARCENT IA office from SWACC.

**Admit or Deny:**


80.     During the Date Range, Vectrus controlled access to ArcSight on the SWA network from SWACC.

**Admit or Deny:**


81.     During the Date Range, Vectrus controlled access to the Quest Change Auditor on the SWA network from SWACC.

**Admit or Deny:**

82.     The ARCENT IA office does not have delegated access to ArcSight on the SWA network from SWACC.

**Admit or Deny:**


83.     The ARCENT IA office does not have delegated access to the Quest Change Auditor on the SWA network from SWACC.

**Admit or Deny:**


84.     The Quest Change Auditor Microsoft Active Directory logs for the NIPR Enclave indicate that Stanley's Workstation was accessed remotely from SWACC within the Date Range.

**Admit or Deny:**


85.     The Quest Change Auditor Microsoft Active Directory logs for the NIPR Enclave indicate that Kirby's HA NIPR Account, from SWACC within the Date Range, initiated the remote access to Stanley's NIPR Workstation.

**Admit or Deny:**


86.     The ArcSight logs for the NIPR Enclave indicate that Stanley's NIPR Workstation was accessed remotely from SWACC within the Date Range.

**Admit or Deny:**

87.     The ArcSight logs for the NIPR Enclave indicate that Kirby's HA NIPR Account, from SWACC, initiated the remote access to Stanley's NIPR Workstation during the Date Range.

**Admit or Deny:**


88.     ArcSight logs regarding Stanley's NIPR Workstation indicating remote access from Kirby's HA NIPR Account were deleted during the Date Range.

**Admit or Deny:**


89.     ArcSight logs regarding Stanley's NIPR Workstation indicating remote access from Kirby's HA NIPR Account were not deleted during the Date Range.

**Admit or Deny:**


90.     ArcSight logs regarding Stanley's NIPR Workstation indicating remote access from Kirby's HA NIPR Account were edited during the Date Range.

**Admit or Deny:**


91.     ArcSight logs regarding Stanley's NIPR Workstation indicating remote access from Kirby's HA NIPR Account were not edited during the Date Range.

**Admit or Deny:**

92.     During the Date Range, Vectrus was responsible for the control of ArcSight for the NIPR Enclaves on the SWA Domain located at SWACC.

**Admit or Deny:**


93.     Vectrus provided ARCENT IA access to ArcSight logs from the SWACC Data Center.

**Admit or Deny:**


94.     Vectrus did not provide ARCENT IA access to ArcSight logs to from the SWACC Data Center.

**Admit or Deny:**


95.     ARCENT IA informed Vectrus of multiple intrusions to Stanley's NIPR Workstation on the SWA Domain at SWACC.

**Admit or Deny:**


96.     ARCENT IA did not inform Vectrus of multiple intrusions to Stanley's NIPR Workstation on the SWA Domain at SWACC.

**Admit or Deny:**

97.     Vectrus informed ARCENT IA that no suspicious activity was found on Stanley's NIPR Workstation.

**Admit or Deny:**


98.     Vectrus informed ARCENT IA that no suspicious activity was found on Stanley's NIPR Workstation based on Vectrus' review of ArcSight logs from within the Date Range.

**Admit or Deny:**


99.     Vectrus informed ARCENT IA that there was no evidence of remote access to Stanley's NIPR Workstation from Kirby's HA NIPR Account based on Vectrus' review of ArcSight logs from SWACC during the Date Range.

**Admit or Deny:**


100.    Vectrus informed ARCENT IA that no suspicious activity was found on Stanley's NIPR Workstation based on Vectrus' review of Quest Change Auditor logs from SWACC during the Date Range.

**Admit or Deny:**


101.    Vectrus informed ARCENT IA that there was no evidence of remote access to Stanley's NIPR Workstation from Kirby's HA NIPR Account based on Vectrus' review of Quest Change Auditor logs from SWACC during the Date Range.

**Admit or Deny:**

102.     Vectrus maintained backup logs from Quest Change Auditor during the Date Range.

**Admit or Deny:**


103.     Vectrus maintained backup logs from ArcSight during the Date Range.

**Admit or Deny:**


104.     During the Date Range, Vectrus controlled ArcSight logs for the NIPR Enclave.

**Admit or Deny:**


105.     During the Date Range, Vectrus could identify the initiating workstation of the remote log-ins to Stanley's NIPR Workstation.

**Admit or Deny:**


106.     During the Date Range, Vectrus could, after identifying the initiating workstation, identify the user of the workstation that used Kirby's HA NIPR Account to remotely log-in into Stanley's NIPR Workstation.

**Admit or Deny:**


107.     During the Date Range, Vectrus was responsible for the Information Technology and Network Communication services located at SWACC as part of the K-BOSSS contract.

**Admit or Deny:**

108.     During the Date Range, Vectrus was not responsible for the Information Technology and Network Communication services located at SWACC as part of the K-BOSSS contract.

**Admit or Deny:**


109.     According to a page on Vectrus' Website, located at <https://vectrus.com/services/programs/kuwait-base-operations-and-security-support-services-k-bosss>, Vectrus was responsible for "*Network and computer support, fiber optics, web and database development, repair, helpdesk, telecommunications, satellite, video, mobile, phone directory, SharePoint*" under the K-BOSSS contract during the Date Range.

**Admit or Deny:**


110.     Kirby's HA NIPR Account remotely accessed Stanley's NIPR Workstation during the Date Range.

**Admit or Deny:**


111.     Kirby's HA NIPR Account used Remote Desktop Protocol ("RDP") to access Stanley's NIPR Workstation during the Date Range.

**Admit or Deny:**

112.    Kirby's HA NIPR Account did not use Remote Desktop Protocol ("RDP") to access Stanley's NIPR Workstation during the Date Range.

**Admit or Deny:**


113.    Kirby's HA NIPR Account was deleted from Microsoft Active Directory during the Date Range.

**Admit or Deny:**


114.    Vectrus deleted Kirby's HA NIPR Account during the Date Range.

**Admit or Deny:**


115.    Vectrus used Kirby's HA NIPR Account to remotely access Stanley's NIPR Workstation during the Date Range.

**Admit or Deny:**


116.    Vectrus obtained information from Stanley's NIPR Workstation by accessing it remotely without authorization.

**Admit or Deny:**


117.    Vectrus investigated an unauthorized access to Stanley's Workstation from a remote location.

**Admit or Deny:**

118.    Vectrus did not investigate an unauthorized access to Stanley's Workstation from a remote location.

**Admit or Deny:**


119.    Vectrus never quarantined Stanley's Workstation.

**Admit or Deny:**


120.    Vectrus was aware that ARCENT IA was investigating Stanley's Workstation in regard to an internal intrusion using Kirby's HA NIPR Account during the Date Range.

**Admit or Deny:**


DATED: January 2, 2017

/s/ Carlos A. Leyva
Carlos A. Leyva
Fla. Bar. No.: 51017
Digital Business Law Group, P.A.
3958 Talah Dr.
Palm Harbor, FL 34684
Phone: (800) 516-7903
Fax: (800) 257-9128
cleyva@digitalbusinesslawgroup.com
*Attorney for Plaintiffs*
*Wayne R. Stanley, Jr. and Marcel Hawkins*

/s/ John T. Nelson
John T. Nelson
Fla. Bar. No.: 119309
Digital Business Law Group, P.A.
3958 Talah Dr.
Palm Harbor, FL 34684
Phone: (800) 516-7903
Fax: (800) 257-9128
jnelson@digitalbusinesslawgroup.com
*Attorney for Plaintiffs*
*Wayne R. Stanley, Jr. and Marcel Hawkins*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 2nd, 2017, I electronically served the foregoing

Plaintiffs' First Requests for Admission upon Defendant's counsel of record, authorized to

accept such service.

/s/ John T. Nelson
John T. Nelson